UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

T.E., *et al.*, :
    Plaintiffs :
:
vs. : NO. 13-cv-643
:
CUMBERLAND VALLEY SCHOOL :
DISTRICT, :
    Defendant. :
:

*M E M O R A N D U M*

*I.    Introduction*

Before the Court are motions for judgment on the administrative record filed by Plaintiffs, T.E., a minor, by and through her parent (Doc. 22), and Defendant, Cumberland Valley School District (Doc. 24). This is an appeal from the decision of a Due Process Hearing Officer ("Hearing Officer," or "Officer"), brought pursuant to the Individuals with Disabilities in Education Act ("IDEA"). See 20 U.S.C. § 1401 *et seq.* The due process hearings were held on October 31, 2012, December 7, 2012, and December 18, 2012. On January 22, 2013, the Hearing Officer issued an opinion in the Defendant's favor. On March 11, 2013, Plaintiffs filed this appeal, seeking to reverse the Hearing Officer's decision. Pursuant to the IDEA, we have jurisdiction over this appeal "without regard to the amount in controversy." 20 U.S.C. § 1415(i)(3)(A). For the reasons that follow, we find for the Defendant and will deny Plaintiffs' appeal.

*II.        Background*

T.E. is a sixteen-year-old student residing in Cumberland Valley School District who has severe dyslexia. (Doc. 1-1 at 3). While T.E.'s verbal comprehension tests in the average range, she has a poor auditory short term memory, making it difficult for her to process words and sentences before she forgets what she has learned. (Doc. 22, ¶ 2; Doc. 27 at 4). T.E. attended Cumberland Valley schools until seventh grade. (Doc. 1-1 at 3). During that time, T.E. received special education in the form of an Individualized Education Plan ("IEP"). In November 2010, during her seventh grade year, T.E.'s parents withdrew her from the district and enrolled her in the Jemicy School, a private school in Maryland that specializes in educating students with language-based reading disabilities. (Doc. 1-1 at 3). T.E. attended the Jemicy School for the remainder of her seventh grade year. T.E.'s parents filed a due process complaint seeking reimbursement from the school district for the tuition and transportation costs for the 2010-2011 school year. (Doc. 1-1 at 3). The parties resolved the complaint through a settlement agreement. Under the terms of this agreement, the District agreed to reimburse T.E.'s parents for the 2010-2011 school year, and to fund T.E.'s placement at Jemicy through 2011-2012. (Doc. 1-1 at 3). The parties also agreed to participate in a re-evaluation in the spring of 2012, at which time the District would issue a new IEP for T.E. (Doc. 1-1 at 4).

In April 2012, the District issued an IEP identifying the following needs relating to T.E.'s disability: "basic reading skills, fluency, writing mechanics, spelling,

2

application of synthesis of language concepts learned in reading and spelling, and memory strategies." (Doc. 1-1 at 4). The IEP set goals for T.E.'s "written expression, reading fluency, reading comprehension, decoding multi-syllabic words, and encoding multi-syllabic words." (Doc. 1-1 at 5). The IEP "calls for one period per day of direct instruction in a multisensory approach to reading instruction with continuing instruction in vocabulary, decoding, and encoding skills. This instruction will be rooted in the Wilson model and will take place outside of the regular education setting." (Doc. 1-1 at 5). Additionally, the IEP provides for one period per day of English writing instruction to take place outside the regular education setting, as well as access to several educational resources such as "a word processing program, graphic organizers/writing models/peer & teacher editing, memory aides, prompting, preview and review of novel academic material, preview and review of content area vocabulary, transition survey, and an extra set of texts for highlighting." (Doc. 1-1 at 5).

T.E.'s parents rejected the IEP, and T.E. returned to Jemicy for the 2012-2013 school year. (Doc. 1-1 at 6). In August 2012, T.E.'s parents filed a second due process complaint, seeking a ruling that the IEP was inappropriate and reimbursement for the costs of sending T.E. to Jemicy. (See Doc. 9-6). As indicated, a due process hearing was conducted over three days. In January 2013, the Hearing Officer issued a decision in the school district's favor. (Doc. 1-1). This appeal followed. Neither party has requested to supplement the record. Both parties now move for judgment on the administrative record.

3

*III.    Discussion*

   *A. Standard of Review*

The IDEA guarantees every child a "free appropriate public education," or "FAPE." <u>Carlisle Area Sch. v. Scott P. ex rel. Bess P.</u>, 62 F.3d 520, 526 (3d Cir. 1995). For disabled children, this education is provided in the form of an IEP, which is "the package of special educational and related services designed to meet the unique needs of the disabled child." <u>Id.</u> Parents who are dissatisfied with their child's IEP may unilaterally transfer their child to a private school "at their own financial risk." <u>Florence Cnty Sch. Dist. v. Carter</u>, 510 U.S. 7, 15 (1993). Parents may then seek reimbursement of tuition and travel costs if it is subsequently determined that the public school placement failed to provide their child with a FAPE. <u>Id.</u> Parents seeking reimbursement must request "an impartial due process hearing" at the state level with a Hearing Officer. <u>Carlisle Area Sch.</u>, 62 F.3d at 526 (citing 20 U.S.C. § 1415(b); 34 C.F.R. § 300.506-512). If the parents are displeased with the findings of the Hearing Officer, they may appeal to the federal district court. 20 U.S.C. § 1415(e).

"The issue of whether an IEP is appropriate is a question of fact." <u>S.H. v. State-Operated Sch. Dist. of City of Newark</u>, 336 F.3d 260, 270 (3d Cir. 2003). We exercise a "modified *de novo*" review of the Hearing Officer's findings and afford those findings "due weight." <u>D.K. v. Abington Sch. Dist.</u>, No. 08-cv-4914, 2010 WL 1223596, at *4 (E.D. Pa. Mar. 25, 2010) (citing <u>Lauren W. *ex rel*. Jean W. v. Deflamanis</u>, 480 F.3d 259, 266 (3d Cir. 2007)). "When reviewing an administrative proceeding in an IDEA

4

case, the district court should 'defer to the hearing officer's factual findings,' unless it can point to contrary non-testimonial extrinsic evidence in the record." Id. If the court chooses to depart from the findings of the Hearing Officer, it must provide an explanation for the departure. S.H, 336 F.3d at 270. "The court is not, however, to substitute its own notions of sound educational policy for those of local school authorities." Id. (internal quotations omitted). We are not bound by the Hearing Officer's conclusions of law. D.K., 2010 WL 1223596 at *4.

*B. The Legal Standard Used by the Hearing Officer*

Plaintiffs argue that the Hearing Officer misapplied the law when evaluating the appropriateness of the IEP. (Doc. 23 at 4-7). Specifically, Plaintiffs claim that the Hearing Officer failed to conduct a "student by student analysis" as required by the Third Circuit. We review this question of law *de novo.*

In his decision finding the IEP appropriate (Doc. 1-1), the Hearing Officer wrote,

> To assure that an eligible child receives a FAPE (34 C.F.R. § 300.17), an IEP must be reasonably calculated to yield meaningful educational benefit to the student. Board of Education v. Rowley, 458 U.S. 176, 187-204 (1982). 'Meaningful benefit' means that a student's program affords the student the opportunity for 'significant learning' (Ridgewood Board of Education v. N.E., 172 F.3d 238 (3d Cir. 1999)), not simply *de minimis* or minimal education progress. (M.C. v. Central Regional School District, 81 F.3d 389 (3d Cir. 1996)).

(Doc. 1-1 at 7). Notably, Plaintiffs' brief cites the same cases that the Hearing Officer cited in his decision. Thus, Plaintiffs agree that Ridgewood is the applicable legal

5

standard, but argue that the Hearing Officer failed to explicitly address a portion of the Ridgewood standard in his decision. That is, in Ridgewood, the Third Circuit stated that an IEP should be evaluated on a student-by-student basis, and not according to a bright-line rule. Ridgewood, 172 F.3d at 248. Plaintiffs contend that the Hearing Officer's decision fails to reflect a consideration of T.E.'s individual needs. We disagree. The decision states that,

> [T]he student has a significant learning disability and requires intensive daily instruction in reading . . . . The student's goals are explicit and measurable. The specially designed instruction creates appropriate vehicles for the delivery of instruction to help the student make progress on those goals. . . . [T]he District recognizes the need for (1) systematic daily instruction in a multisensory reading program that (2) takes place in a resource setting with a trained instructor.

(Doc. 1-1 at 8). This portion of the decision demonstrates that the Hearing Officer considered T.E.'s individual needs, and found that the IEP met those needs. While Plaintiffs may disagree with this finding, the Hearing Officer did not commit an error of law.

*C. The Hearing Officer's Reliance on "Retrospective Testimony"*

Plaintiffs argue that the Hearing Officer's decision should be overturned because he erroneously relied on "retrospective testimony" to conclude that the IEP was appropriate. "Retrospective testimony" is "testimony that certain services not listed in the IEP would actually have been provided to the child if he or she had attended the school district's proposed placement." R.E. v. New York City Dept. of Educ., 694 F.3d 167, 185 (2d Cir. 2012). Essentially, Plaintiffs argue that the IEP will not be implemented as
6

promised, and therefore, is inappropriate. As noted by Defendant, courts have held that "[s]peculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral [private] placement." Id. at 195. Accordingly, we find this argument lacks merit, and does not justify overturning the Hearing Officer's decision.

### D. The Appropriateness of the IEP

Last, Plaintiffs argue that the Hearing Officer's findings of fact regarding the appropriateness of the IEP should be reversed. As discussed above, "[a] federal district court reviewing the administrative fact finder in the first instance is . . . required to defer to the ALJ's factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." S.H., 336 F.3d at 270. When reviewing the appropriateness of an IEP, the Supreme Court has instructed that we engage in a two-part analysis: first, we examine whether the school district complied with the IDEA's procedural requirements; and second, we must determine whether the IEP substantively complies with the student's needs. Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley, 548 U.S. 176, 206-07 (1982). Because Plaintiffs do not claim any procedural errors occurred, we will limit our discussion to the substantive reasonableness of the IEP.

The IEP must include the following items:

> It must include a statement of the child's current level of performance, and how her disability affects her performance. It must set measurable annual goals relating both to progress in the general curriculum and additional educational needs arising from her disability. The IEP must detail those special educational services and supplementary aids that the school will provide, explain how they will contribute toward meeting the
7

> annual goals, how they will allow the child to progress in both the general curriculum and participate in extracurricular activities, and describe how the child will interact with disabled and nondisabled children. In measuring the child's progress, the IEP must explain whether standard student assessments will be used. If not, the IEP must explain why not and how the school will assess the child.

S.H., 336 F.3d at 264 (internal citations omitted). We find no extrinsic evidence in the record contradicting the Hearing Officer's finding that the IEP is substantively appropriate. The IEP identifies T.E.'s needs and her present educational levels; it sets goals in multiple areas; and it provides for individualized reading instruction designed to meet her needs. The IEP also provides for continuing school services over the summer.

Plaintiffs argue that the Hearing Officer erred by failing to accept the testimony of Plaintiffs' expert witnesses who opined that the IEP was inappropriate. Plaintiffs contend that Defendant failed to present contradicting expert testimony, and therefore, Plaintiffs' expert opinions should have been credited by the Hearing Officer. The record shows that Defendants did present testimony from several well-trained educational professionals who, while not certified as experts before the tribunal, contradicted Plaintiffs' expert opinions. Moreover, the record shows that Plaintiffs' experts presented credibility issues--one expert admitted that she did not fully understand the District's IEP, and another stated that she had not reviewed the IEP. It is within the Hearing Officer's discretion to weigh the testimony of these witnesses and decide which

opinions to credit. It appears that the Hearing Officer chose to credit Defendant's witnesses, and the record supports that decision.

The crux of Plaintiffs' appeal is a strong belief that T.E. would receive better instruction at the Jemicy School. (Doc. 23 at 12 ("T.E. requires intervention as intense as she receives at the Jemicy School.")). However, as the Third Circuit explained in S.H., "[t]he IDEA does not require the School District to provide [T.E.] with the best possible education. . . . Instead, the School District must show that the proposed IEP will provide [T.E.] with a *meaningful educational benefit*." S.H., 336 F.3d at 271. After hearing three days of testimony, the Hearing Officer concluded that "the District recognizes the need for (1) systematic daily instruction in a multisensory program that (2) takes place in a resource setting with a trained instructor. . . . [T]he District's program, from needs-identification to goals to instruction to placement, is reasonably calculated to yield meaningful educational benefit." (Doc. 1-1 at 8). The record supports the Hearing Officer's finding that the IEP proposed by Defendant will provide T.E. with a meaningful education benefit.

*IV.	Conclusion*

For the foregoing reasons, Plaintiffs' motion for judgment on the administrative record (Doc. 22) will be denied, and Defendant's motion for judgment on the administrative record (Doc. 24) will be granted.  We will issue an appropriate order.


				s/William W. Caldwell
				William W. Caldwell
				United States District Judge